**SALTZ et al. v. SALTZ BROS., Inc., et al.**
**No. 6558.**

United States Court of Appeals for the District of Columbia.

Decided April 27, 1936.

Rehearing Denied May 25, 1936.

Leon Tobriner, Selig C. Brez, and Walter N. Tobriner, all of Washington, D. C., for appellants.

Charles B. McInnis and John E. Laskey, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and GRONER and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from an order of the Supreme Court of the District of Columbia dismissing appellants' bill of complaint praying for the administration and disposition by a court receiver of the assets of the defendant, Saltz Bros., Inc.

In the bill of plaintiffs, now the appellants, it is averred, inter alia, that they were stockholders, officers, and creditors of Saltz Bros., Inc., a corporation incorporated under the laws of the state of Connecticut for the purpose of engaging in the retail men's clothing and haberdashery business in the District of Columbia; that, with unimportant exceptions, the corporation has maintained its entire business and assets in the city of Washington, D. C.; that all of its assets are now within that city, and the corporation carries on its business functions exclusively in that city; that, while it was incorporated for reasons of convenience under the laws of Connecticut, it was in fact a corporation purely local to the District of Columbia, and maintaining all of its business therein.

The plaintiffs in their bill set out sections 21 and 22 of the Corporation Laws of the state of Connecticut (Gen.St.Conn. 1930, §§ 3388, 3389), providing that the president and treasurer of such corporation shall annually, on or before the 15th day of February or August, make and file in the office of the secretary of state of the state of Connecticut a certificate setting forth, as of the 1st day of January or July immediately preceding, certain information relative to the officers and directors of the corporation, its capital stock, the location of its principal office in the state, and the name of its statutory agent for the purpose of service of process; and further providing that every corporation required to file such annual report, which shall neglect to file the same for two consecutive years, and shall not pay to the state the forfeitures imposed for such neglect, shall prima facie be deemed to have forfeited its corporate rights and powers, and its corporate existence may be terminated in the manner therein provided without impairing the rights of property of such corporation, or of its creditors, and that, should the corporation pay the forfeitures and penalties incurred by its default, the secretary of state shall reinstate the corporation as a valid corporation of the state.

The plaintiffs also alleged that Saltz Bros., Inc., having failed to comply with the provisions of the foregoing sections, forfeited its corporate rights and franchises on December 26, 1933, and that the forfeiture was due to no fault of the plaintiffs, as all matters relating to the filing of such reports were handled by defendant, Langrock, and plaintiffs had no knowledge of the forfeiture until a short time prior to the filing of this bill. The plaintiffs set out the corporate structure of the company, showing that, after the contemplated retirement of certain preferred and common stock, the remainder of the common stock would be owned 50 per cent. by the defendant, Langrock, and 50 per cent. by plaintiffs; that the principal officers of the corporation were Lewis Saltz, president, S. Thomas Saltz, vice president and secretary, and David T. Langrock, treasurer; that the total current assets of the business as of April 30, 1935, were $85,828.48 and its liabilities to creditors then aggregated the sum of $28,509.02; that the corporation was indebted to each of the plaintiffs in the sum of $3,139.68, being the amount of bonus due them for the fiscal year ending January 31, 1935, under their contract of employment.

The plaintiffs furthermore stated that the agreements leading to the incorporation of Saltz Bros., Inc., included provisions for the election of president and vice president of the corporation, and an employment contract whereby plaintiffs were to be employed by the corporation to manage its affairs for a period of five years; that this agreement of employment expired on October 19, 1934, but that plaintiffs had been continuing in their respec-

tive capacities as managers of the business without written or definite agreement for future employment; that the aforesaid bonus is due and payable to plaintiffs, but that defendant Langrock refuses to permit the payment thereof; that, while plaintiffs have the right to institute action at law against the corporation for the recovery of the bonuses and to issue attachments before judgment, to do so might cause other creditors of the corporation to do likewise, all to the detriment and injury of the business of the corporation.

The plaintiffs complain of continued dissension and hostility between defendant Langrock and themselves; of refusals on the part of Langrock to sign necessary checks on bank accounts for the payment of legitimate bills of the corporation; of an attempt on the part of Langrock to elect new officers and directors of the corporation and to oust the plaintiffs from any control or voice in the management thereof, and a threat on the part of Langrock to "put plaintiffs out on the street"; an attempt by Langrock to take possession of the business, his advice to various banks in the District of Columbia handling funds of Saltz Bros., Inc., that new officers had been elected and that the signatures of the old officers should not be honored on checks of the corporation, thereby tying up the corporation's funds, permitting certain checks to go to protest, and invoking the threat of one of its largest creditors to proceed to an attachment against the corporation before judgment.

The plaintiffs further alleged the failure of proposals looking to an amicable settlement of the difficulties involved, and, that because of the continued hostility between plaintiffs and Langrock, plaintiffs were no longer willing to continue the operation of the business; that the customers of the business were solely of plaintiffs' personal following, and plaintiffs believed and averred that, if they withdrew from the business without some arrangement being made for its sale as a going concern, its volume would fall off so rapidly that it would be impossible to sell it as a going one, with a consequent loss to all creditors and stockholders.

The plaintiffs, therefore, prayed for the appointment of a receiver to take charge of all of the property and assets of the corporation within the jurisdiction of the court and to operate its business until further order of the court, that the property and assets of the corporation within the jurisdiction of the court be administered and disposed of under the direction of the court, and that all necessary orders and references for the aforesaid purposes be made.

All the defendants thereupon appeared and moved the court to dismiss the bill for want of merit. The lower court thereupon, after argument by counsel, dismissed the bill. From this action the present appeal was taken.

We think that the ruling of the lower court upon the facts stated in the bill of complaint was erroneous.

Two questions naturally present themselves in the case: First, whether the relief sought by plaintiffs could be administered by our courts if the corporation in question had been organized under the laws of the District of Columbia; and, second, whether such relief can be administered in the present case in view of the fact that the corporation was organized under the laws of the State of Connecticut.

We think that both of these questions must be answered in the affirmative.

The facts stated in plaintiffs' bill disclose that the stock of the corporation is owned in equal shares by two contending parties and that this condition threatens to result in the destruction of its business and assets. It appears that the parties cannot agree upon the conduct and management of the business and that under existing circumstances neither one is authorized to impose its views upon the other. Under such circumstances a court of equity may appoint a receiver to preserve the property of the corporation, administer it, and, if necessary, dispose of it for the protection of the creditors and the benefit of the owners. In the case of Masters v. Hartmann, 45 App.D.C. 253, it was held by this court that, where disagreements of the members of the board of directors of a corporation, who are equally divided in number, results in a suspension of the business of the company, leaving nobody to manage its affairs or conserve its assets, a receiver will be appointed to take possession of its property and manage its affairs under the supervision of the court. See, also,

Sheridan Brick Works v. Marion Trust Co., 157 Ind. 292, 299, 61 N.E. 666, 87 Am.St.Rep. 207; Jasper Land Co. v. Wallis, 123 Ala. 652, 656, 26 So. 659; D. A. Tompkins Co. v. Catawba Mills (C.C.) 82 F. 780.

In respect of the second question, it appears that the Connecticut charter of the corporation has been forfeited; that the contract between the plaintiffs and the defendants has expired by its own limitations; that all of the assets of the corporation are located in the District of Columbia; that its business is actually carried on within the District; and, that its connection with the state of Connecticut is, and was intended to be, purely nominal. It also appears that all of the parties in interest are now before the court and subject to the court's orders in the present case.

Under these circumstances, the courts of the District possess the authority and are charged with the duty of appointing a receiver for all of the assets of the corporation which are within the District of Columbia in order that they may be administered for the benefit of all the parties interested therein.

In the case of Burnrite Coal Briquette Company v. Riggs et al., 274 U.S. 208, 47 S.Ct. 578, 579, 71 L.Ed. 1002, it was said by the court: "The fact that a bill seeking appointment of a receiver of a corporation is brought in a state other than that of the incorporation may lead the court to decline to interfere as a matter of comity or for want of equity; or it may require the court to limit the scope of the relief granted. But the fact of incorporation under the laws of another state does not preclude jurisdiction."

In Williamson v. Missouri-Kansas Pipe Line Co. (C.C.A.) 56 F.(2d) 503, 508, the court said: "Thus it is quite apparent that, aside from the question of jurisdiction, which in the instant case is admitted, the question as to whether the trial court should exercise jurisdiction is one of policy and expediency, regardless of whether or not the acts complained of involve the internal affairs and management of the corporation. In such instances courts are not warranted in declining to exercise jurisdiction merely because the act complained of involves internal affairs and management of the corporation; but it must further appear that

to do so would be inexpedient or contrary to the policy of the law."

The opinion of the court also quotes from volume 6, par. 8011, of Thompson's Commentaries on Corporations, to the effect that exceptions necessarily exist to the general rule that actions affecting the internal management of a corporation must be brought in the state of its incorporation, and presents the following example: ".* * * Take, for instance * * * a case * * * where a manufacturing corporation migrated with its entire business, corporate books, and personnel, from the State of its creation into another State, and there did all its business and held all its corporate meetings. Clearly, the courts of the State in which it had thus * * * acquired a de facto domicile, would be better able to take jurisdiction of an action by its stockholders for the redress of grievances in respect of corporate management, than would a court of the jurisdiction from which it migrated."

Accordingly, we reverse the order and decree of the lower court and remand the cause for further action in accordance herewith.

Reversed, with costs.